IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMBERLY ANN BACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-262-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Kimberly Ann Back requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 11, 1967, and was forty-five years old at the time of the administrative hearing (Tr. 32, 176). She has a high school education and completed two years of college and has worked as a bagger, administrative clerk, teacher's aide, and cashier (Tr. 34, 224, 63). She alleges that she has been disabled since June 8, 2010, due to fibromyalgia, deterioration and bulging of the discs in her back, depression, and high blood pressure (Tr. 223).

## Procedural History

On April 4, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Bernard Porter held an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 1, 2013 (Tr. 11-22). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that she could occasionally reach overhead and climb ramps or

ladders [sic], and could never climb ladders and/or scaffolds, crawl, work around unprotected heights and/or moving mechanical parts, or be exposed to temperature extremes (Tr. 15). Additionally, he found she needed to alternate between sitting and standing at intervals no longer than thirty minutes (Tr. 15). The ALJ further found that the claimant could do routine repetitive tasks where interaction with supervisors, coworkers, and the public is no more than occasional and where time off task could be accommodated by normal breaks (Tr. 15). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, furniture rental clerk, parking lot attendant, and electrical assembler (Tr. 22).

## Review

The claimant contends that the ALJ erred by failing: (i) to properly assess her credibility, (ii) to consider her daughter's Third Party Function Report, and (iii) to support his RFC with substantial evidence. The Court agrees with the claimant's second and third contentions and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of major depression; high blood pressure; migraine headaches; cervical, thoracic, and lumbar disc disease; and fibromyalgia (Tr. 13). He found her medication side effects, visual disturbances, dizziness, lightheadedness, poor balance, stomach problems, impaired hand function, and mild obesity were nonsevere (Tr. 13-14). The relevant medical evidence as to the claimant's physical impairments reveals that she consulted with providers at Allen Rural Family Medicine on a number of occasions between April 2010 and August 2011 for pain

throughout her body including her hips, right hand, ankles, jaw, left shoulder, legs, and/or arms (Tr. 319, 321, 324, 326, 329, 330, 333, 379). The claimant's various assessments included osteoarthritis, nonacute abdominal pain, peripheral neuropathy, anxiety, depression, gastroesophageal reflux disease, and first degree shoulder separation (Tr. 317, 320, 322-23, 325, 327, 380). Physical examinations of the claimant's back, extremities, and musculoskeletal system repeatedly found no tenderness or deformities with full range of motion (Tr. 317, 320, 322, 325, 327, 380). The claimant's treatment at Allen Rural Family Medicine consisted largely of medication management (Tr. 317, 320, 323, 325, 327, 381).

The claimant consulted with providers at Texoma Neurology five times between February 2011 and January 2012, initially for peripheral neuropathy (Tr. 391-408). Her various assessments included unspecified myalgia and myositis; cervicalgia; lumbago; cervical, lumbosacral, and thoracic spondylosis without myelopathy; mood disorder; unspecified neuralgia, neuritis, and radiculitis; and migraine with aura (Tr. 393, 396, 400, 404, 407). Physical examination findings varied among her providers. In February and March 2011, Colin Hill, a physician assistant, found palpable pain in the claimant's spine and lower back, non-tender sacroiliac joints, normal range of motion in her neck, normal muscle tone and full range of motion, but noted hyperactive patellar reflexes (Tr. 402-08). He recommended daily warm compresses with lumbar stretching exercises and ordered lab tests and diagnostic imaging (Tr. 404, 407). In September 2011, Bonnie Smithers, an advanced practice nurse, found restricted range of motion in the claimant's neck, decreased range of motion and tenderness in her spine, joint limitations, and a

-5-

guarded gait (Tr. 398-401). She recommended continued pain management, physical or aquatic therapy, and stretching exercises (Tr. 400). In January 2012, Dr. Sundaram found restricted range of motion in the claimant's neck, decreased range of motion and tenderness in her spine, joint limitations, a guarded gait, and impaired coordination (Tr. 394-397). The diagnostic imaging conducted during her treatment at Texoma Neurology included a March 2011 MRI of the claimant's cervical spine that was unremarkable except for mild degenerative changes at C5-6 without spinal canal stenosis or neuroforaminal encroachment and a March 2011 MRI of the claimant's cervical spine that revealed an annular tear at L5-S1 and multilevel degenerative changes (Tr. 310, 313-14). MRIs of the claimant's brain in February 2012 were unremarkable (Tr. 408-09).

The claimant presented to Dr. F. Shawn Madden on May 4, 2011, for pain in her neck, lower back pain, and hip (Tr. 363). Physical examination revealed normal range of motion in her cervical spine with pain, decreased range of motion in her lumbar spine with pain, normal range of motion in her upper extremities without pain, normal range of motion in her lower extremities without pain, and a positive straight leg test on the right (Tr. 364). Dr. Madden also found pain with palpation of the cervical and lumbar paraspinal muscles and 18/18 points for fibromyalgia (Tr. 364). His impression was degenerative disc disease of the lumbar and cervical spine, lumbar radiculitis and mild foraminal narrowing, fibromyalgia, and mild obesity (Tr. 364). Dr. Madden recommended a steroid injection at L3-4, which was administered the following day (Tr. 363, 377). At a follow up visit on May 23, 2011, the claimant reported minimal pain relief from both the injection and her medication (Tr. 362). Dr. Madden repeated his

previous physical examination findings and impressions and adjusted one of her medications (Tr. 359). At a follow up visit on July 15, 2011, the claimant reported the injection helped her pain for three weeks and that her medications were working better (Tr. 360). Dr. Madden repeated his previous physical examination findings and impressions and recommended physical therapy and home stretching exercises as well as a steroid injection at L4-5, which was administered on August 11, 2011 (Tr. 361, 375).

The claimant's daughter Kaitlyn Back completed a Third Party Function Report (Tr. 230-37). She stated that the claimant's legs and hand "give out" and go numb and that she does not have good balance (Tr. 230-31, 237). She stated the claimant cooks daily for thirty minutes to an hour; however, if the claimant is having a "bad day" she cooks instead (Tr. 232). She indicated that the claimant could clean, do laundry, and mow depending on how she felt; however, she was in pain when the task was complete, it takes her twice as long as it used to, and she needed reminders (Tr. 232). Additionally, she stated there are times when the claimant is unable to lift a gallon of milk and if she squats, bends, or kneels, she is unable to get back up (Tr. 235).

State reviewing physician Dr. Kenneth Wainner completed a Physical Residual Functional Capacity Assessment on July 25, 2011, and found the claimant capable of performing light work with limited reaching in all directions (Tr. 366-73).

Dr. Joshua Kershen, a neurologist, conducted a consultative examination on April 27, 2012 (Tr. 411-13). He noted the examination was normal with significant give way and pain behaviors and recommended pain control (Tr. 412-13).

At the administrative hearing, the claimant testified she could not work due to fibromyalgia, medication side effects, depression, anxiety, migraine headaches, lower back pain, and arthritis (Tr. 42-43). She stated she experienced migraine headaches three to five times a week and fibromyalgia pain constantly (Tr. 43-44) She testified her migraine medication relieved some of her pain and that her fibromyalgia medication was effective but made her tired and unable to concentrate (Tr. 43-44). She stated as a result of her numerous medications, she is nauseous and has sores and scars on her hands (Tr. 46). As to specific limitations, she testified if she was permitted to change positions periodically, she could stand for a "couple" of hours and sit for half of an eight-hour workday, could lift up to ten pounds, could walk "one side of a block", and could not grip (Tr. 48-49, 59-60).

In his written opinion, the ALJ summarized the claimant's testimony as well as the medical record, but did not discuss the Third Party Function Report. At step four, he found the claimant not credible due to noncompliance with prescribed physical therapy; lack of any statement or recommendation that she is unable to work; lack of evidence consistent with significant pain; lack of any physician finding persistent medication side effects resulting in functional limitations or that were incapable of being controlled by medication adjustments or change; employment and receipt of unemployment benefits during the alleged disability period; and his own observations at the hearing (Tr. 17-21).

As a part of her contention that the ALJ did not support his RFC with substantial evidence, the claimant argues that the ALJ did not properly analyze her fibromyalgia-related pain. In assessing allegations of pain, an ALJ "must consider (1) whether

Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Because there was objective evidence that the claimant had a pain-producing impairment, *i. e.,* fibromyalgia, the ALJ was required to consider the claimant's pain and the extent to which it was disabling. And because the ALJ found that the claimant's fibromyalgia was a severe impairment at step two, *i. e.,* having more than a minimal effect on her basic work activities, it is "impossible to conclude at step four that her pain was insignificant." *Baker v. Barnhart,* 84 Fed. Appx. 10, 13 (10th Cir.2003); *see also Duncan v. Apfel,* 1998 WL 544353, at *2 ("We note the inconsistency of finding that a pain syndrome is severe at step two and insignificant at step five."). Here, rather than discuss the evidence, the ALJ rejected the claimant's pain using boilerplate language that stated, "[s]evere pain will often result in certain observable manifestations, such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, muscular spasms, the use of assistive devices, or prolonged bed rest" (Tr. 679). *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). *See also Moore v. Barnhart*, 114 Fed. Appx. 983, 991-92 (10th Cir. 2004), *citing Sarchet v. Chater*, 78 F.3d 305, 306

(7th Cir. 1996) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding the ALJ erred in "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement."); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting fibromyalgia is "poorly-understood within much of the medical community [and] . . . is diagnosed entirely on the basis of patients' reports of pain and other symptoms."). *See also Gilbert v. Astrue*, 231 Fed. Appx. 778, 784 (10th Cir. 2007) ("[T]he lack of objective test findings noted by the ALJ is not determinative of the severity of [the claimant's] fibromyalgia."). The ALJ thus failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, she could perform with her level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain she suffers*.") [citation omitted].

Additionally, the ALJ failed to account for the Third Party Function Report. Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from nonmedical sources who have not seen a claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by

considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6. Here, the ALJ made no mention of the Third Party Function Report, and thus it is not clear that he considered this evidence in making his decision. "[T]he ALJ is not required to make specific findings of credibility *only* if 'the written decision reflects that the ALJ considered the testimony,'" *Blea v. Barnhart,* 466 F.3d 903, 915 (10th Cir. 2006) [citation omitted] [emphasis added], and his failure to do so here is reversible error. *See Threet v. Barnhart,* 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion ... is itself supported by substantial evidence."). *See also Baker v. Bowen,* 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.") [citation omitted]. The omission is particularly problematic here because the Third Party Report bolsters the claimant's own testimony and reports and more specifically corroborates the presence of pain-producing impairments.

Because the ALJ failed to properly account for the claimant's pain in drafting his RFC at step four, and further failed to properly address the Third Party Function Report contained in the record, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any

adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**